And the next case for argument is United States v. Estrella. Evgeny Parkman from the Office of the Federal Public Defender for the Appellant Christian Estrella. I'd like to reserve two minutes for rebuttal, please. This case is controlled by United States v. Caceres, which requires police officers to provide knowledge of a person's active parole condition before acting on that condition. The district court applied the wrong standard. It held that Officer Truett's reasonable belief that Ms. Estrella was presently on parole with a suspicionless top condition justified the seizure on August 14, 2019. That holding was contrary to Caceres. Under the correct standard, Officer Truett did not know that Ms. Estrella was presently on parole. First, he did not know the end date of Ms. Estrella's parole term. Second, he knew neither the start date nor the length of his — Roberts. So what formulation are you using? Are you using probable cause? It's knowledge? Is that proof beyond a reasonable doubt, preponderance of the other? What is there precisely as the standard? It's actual knowledge. And so it's different than burdens of proof, which is what the government has to prove. You have actual knowledge, and actual knowledge of what? That a person is — has a present active parole condition before relying on that condition. And — And how often must that be updated? Well, if — I think that asks about staleness. So if the officer knows that a person is on parole until a particular date, then that officer has knowledge. And it could be that the knowledge gets stale. That's a different issue. But we don't have that here, because the officer never knew the end date of parole and never knew the beginning or — Officer — Officer Truitt. Correct. Correct his name? He had knowledge of the parole status, obviously. Correct? No. That's not correct. You're saying that the evidence in the case isn't that Officer Truitt did not have knowledge of his parole status? He had knowledge that he was previously on parole. He did not have knowledge of his current parole status. I think it's more correct to say he did not have knowledge of the end date, which has been your argument, I understand, following up with what Judge Bobbie just asked you. Isn't it a fact the record reflects he didn't — he didn't indicate he had knowledge of the end date of the parole? I'm not sure that's a difference or a distinction, or that's — there might be a difference or a distinction without a difference. That's what I mean. Because if he does not know that he's current — if he does not know the end date or he doesn't check his current parole status, he doesn't know that he's currently on parole. Then the point is, is that despite the clear provisions of California law, as was upheld by the Supreme Court in Sampson v. California, that a parolee under supervision may be searched or seized at any time of the day or night with or without a search warrant or without cause, that in terms of being within the parameters, the officer must have actual knowledge on the day in question. He has — well, he has to have knowledge — he doesn't have to check on the day, but there's various ways an officer can obtain that knowledge. He can obtain that knowledge earlier, or he can check on the day, which is very easy to do. Well, I'm asking you specifically, how does this translate in terms of street activity, in terms of seeing this individual wearing a hat with the A's on it, the Oakland A's, that implies some gang activity? That's the record, is it not? That was the basis, was it not? No, Your Honor. The stop happened before the officer saw — well, I guess the government has tried to justify the stop as a pure stop without suspicion, based only on the officer's knowledge that the person is — Well, I understand that, Your Honor. I'm trying to get back to the matter of knowledge, because essentially, the matter of the standard — again, following up on Judge Bybee's question as to what is the standard to apply, whether it's objectively reasonable belief — and your point has been, in your briefing, is actual knowledge. Correct? That's required by United States v. Caceres. And my question to you is, I'm trying to get an answer to you, I'm trying to — in terms of the street confrontation here, exactly how is that actual knowledge to be timed? When is it to be updated? Is he to stop, call a parole officer, check on the day in question to say that, yes, he is or is not on parole? He should stop what he's doing and make the phone call? Is that what you're suggesting? Not if the officer knows ahead of time that he's presently on parole. So I'm not asking — I'm not telling the officer how to do their job. I'm just asking that they do do their job, which is the requirement of Caceres and Moreno and Jobe and Cordie in multiple cases by this Court that require a knowledge requirement. So it's not — it's not that he has to update it every single second. It's just at some point the officer has to have knowledge that the person is on parole as of that date.  Well, the cases of — so I understand the cases of the Ninth Circuit on this issue. The cases have been clearly that you can't have retroactive application. I understand that. In this case, which you cited, deal with the situation where an officer takes a step and then later seeks to justify it by saying, oh, by the way, he was on parole. And the cases have said, no, you have to show some knowledge at the time of that. Correct. So if I may explain how Caceres controls the issue. In Caceres, the officer knew that the defendant was presently on parole before conducting a search of his car. The two gaps in the officer's knowledge were that he did not know that the defendant had committed his offense after 1997, and he did not know that the defendant had been paroled in California. So two gaps in the knowledge. And those assumptive leaps by the officer to assume that Penal Code 3067 applies and that this person whom he knows is on parole does have a suspicion of stop condition, those leaps were much smaller than the leaps that Officer Tread here made, which were that if someone's on parole four months ago, which is the most recent information he had, that they're still on parole now. Well, Ben, I don't mean to belabor this, but just in terms of what it seems to me when all this comes down to is your argument basically is how current must an officer's knowledge of parole status be and how frequently must it be updated? That's really how it translates out, does it not? I don't think so, Your Honor. I think this would be a very different case if at some point during Officer Tread's conversations with the parole officer for Mr. Estrella or just on his own, he looked up his parole terms and he had learned that he's on parole until 2020. Then that would be knowledge and we wouldn't be having any kind of discussion. He never did that. It's just good police work to know before you stop someone. And I want to emphasize, this is a situation where there is no reason to suspect any criminal activity. So this stop is based only on the suspicion of stop condition, only on the parole status, which is motivated by a positive citizenship, a desire for reducing recidivism. There's nothing here that requires exigency. And this knowledge requirement is the only barrier that prevents police officers from stopping and searching ordinary citizens who are not on parole when there is no reason to suspect criminal wrongdoing. So it makes sense that there's a barrier and that's what Casare has held is that this is a strong knowledge barrier and we're not going to lower this barrier and expand the coercive power of police officers, which would, of course, come at the expense of individual liberty when there is no justification for that trade-off, when there is no exigency and when the actual police action required to determine something that's binary. It's not something that when a police officer is trying to figure out, well, is this person committing a crime? Has he committed a crime? Is there some reason to believe criminal conduct is going on, which requires police judgment? This is not that situation. This is you figure out if a person is on parole or not, and if they are, then you can do a suspicionless stop. If you don't, it's very easy to check, and it's just good police practice to require that. I think that what you're saying makes sense, but I don't think Casare says actual knowledge, right? It just says advanced knowledge? That's right. But the holding says that there could be no assumptive leaps, because if it was just reasonable belief, it's reasonable for an officer to believe, especially when the facts of Casare's are. But I'm just wondering what's wrong with the probable cause standard to know, to believe he's on parole? Well, probable cause, it would involve a lot more stops of people who are not on parole. When the police have no reason to suspect that. But that's consistent with some of our case law. Like, we have, some of our case law says that you have to have probable cause to believe that a parolee is in a house, that resides in a house in order to search that house, right? Right. But that's a downstream determination after a person already knows that, after the officer already knows a person is on parole. But that's the same level of protection you give to those people that are in that house, right? That it's a probable cause. But the reason that the officers have that kind of leeway in the first place is because there's someone who's on parole who has a condition who is, that allows the officer to make that jump. But I do think that, I'm not aware of any court that has adopted a probable cause standard for anything lower than knowledge. Every court has, that has, in the federal system that I've seen, has called it advanced knowledge, awareness, or knowledge. And because there is- But that's not a level of knowledge. It's just temporal knowledge, right? Well, I would say that it's like, if an officer observes a fact, the officer has to have knowledge of that fact. And it's because- But there are different levels of knowledge, right? Sometimes you know things to 100% certitude. Sometimes you believe it like 75%, 60%, you know? Well, I think there's a difference between like a source that, so you get knowledge from a source, and you're not sure if that source is 100% accurate. And so that's fallible, right? And so the herring in those line of cases allow for that kind of situation. But it's different when, if I may answer- Go ahead. It's different when the officers don't have information that the person's on parole and they're making assumptive leaps. And that's, Caceres deals with that and prevents. Counsel, you said knowledge, advanced knowledge, that the courts have said, knowledge, advanced knowledge, and awareness. And I mean, awareness just seems to me just a little bit looser. I mean, it's just so hard to say that Tourette did not, Truett did not have an awareness that he was a parolee. He had awareness that he was a parolee, but not that he is a parolee. And that's the missing link. He had to have awareness of his current status, and that's what was absent. We'll give you some time for rebuttal. Go ahead. Good morning, Your Honors, and may it please the Court. Molly Smolin for the United States. This Court should affirm the District Court's denial of Estrella's motion to suppress on either of two independent grounds. First, the record conclusively demonstrates that Officer Truett had sufficient knowledge that Estrella was on parole on the date of their encounter based on his personal interactions with both Estrella and his parole officer, his knowledge that parole terms in California are generally three to four years and that Estrella was well within that time frame, his knowledge of Estrella's criminal history and parole conditions, and his knowledge that Estrella had violated his parole by committing a battery a mere four months previous. And second, as the body-worn camera footage demonstrates, Estrella's encounter with the officers was entirely consensual throughout the first 90 seconds until he expressly confirmed to Officer Cooley that he was currently on parole. Officer Truett knew. So, Counsel, you said that he had sufficient knowledge of his parole status. So what is the standard of knowledge that you think we should be applying? Well, Your Honor, knowledge is defined as a state of mind in which a person has no substantial doubt about the existence of a fact. But what Estrella is really advocating for here is not a knowledge standard. He's advocating for a standard of certainty, which is a state of mind in which it is impossible to doubt or unquestionable. And that is fundamentally seeking a bright-line rule that is requiring this up-to-the-moment certainty regarding parole status, which is at odds with the way that Fourth Amendment issues are traditionally analyzed. Yeah. It does seem consistent, though, with one of the — with the last paragraph in our case, and that's what concerns me. I disagree, Your Honor. In Caceres, to the extent that there was a knowledge requirement being imposed, it was only that an officer know that someone is specifically a California parolee and that they committed their offense after January 1, 1997, which the record here more than supports. In fact, as this Court stated in Caceres, it was not a finding that the officer knew that the defendant was currently on parole. It was characterized as awareness. The officer was aware that the defendant was on parole. And the record in that case shows that his awareness was based only on a question to the defendant after the defendant had already been seized. Are you on parole? To which the defendant responded, yes, that's why I ran. Well, in Caceres, there was essentially the officers — the ruling was that the officers did not know whether the parole fell within the parameters of the California search statute, correct, which is a distinguishing point here. Yes, Your Honor. That's another reason. But, Ken, Judge Bumate's question, if we can follow up on that earlier, is what is the standard that the government thinks apply? It appears the defense argument is actual knowledge. And again, the question I raised earlier, how often do you have to update actual knowledge? Do you have to stop and make a phone call each time? It appears to be the position of the defense, actual knowledge. But what is the standard that you think applies? Would it be more appropriate to be a probable cause standard, probable cause to believe that one is still on parole? Because you have argued, I believe, for if it's objectively reasonable, an objectively reasonable belief, probable cause is perhaps a little higher standard than that, is it not? I would say that knowledge in this context is more akin to a probable cause standard. Probable cause to believe that Estrella was still on parole because of the period of time normally allowed and because of past knowledge of him than probable cause to believe that he's still on parole. It would be more akin to that, Your Honor. Okay. Then it would be the objectively reasonable belief you've mentioned in your brief it might be a little more appropriate to establish a probable cause standard, correct? I think that that would be a reasonable outcome, Your Honor. And here, Officer Truitt, the record demonstrates that he had knowledge that was regularly being updated regarding this particular individual. Not daily, but with some regularity. Yes, Your Honor. Approximately 13 months had passed since Officer Truitt learned that Estrella had registered as a gang member on parole in the small town of Lakeport. But under the standard that Estrella is advocating for here, he told this court that he's not arguing staleness. That what he's saying is that Officer Truitt never knew when Estrella was going to be on parole. And under that standard, even that initial parole compliance check that Officer Truitt conducted on July 3, 2018, one day after learning that Estrella had registered as a gang member on parole, even that, under Estrella's proposed standard, would not have been supported by knowledge because he did not learn on July 2 what Estrella's actual parole end date was. And that's simply not a sustainable standard. It's not something to which police officers should be held to update their knowledge with that sort of regularity, the requirement of up-to-the-moment certainty. It's simply nothing that is supported statutorily or by case law in a context like this one. Turning to my next point, Mr. Estrella was not seized until after he expressly confirmed his parole status, which was approximately 90 seconds into his encounter with the officers. Wouldn't that require us to get into a factual adjudication here? He argues that there is a gap between when the recording started. No, Your Honor. There is no reason to conduct fact-finding here because what we have in Exhibit A is a recording that begins with the officers saying to Mr. Estrella, what are you up to today? That's one second in to Exhibit A. So even if the court, and I believe Your Honor is referring to Mr. Estrella's declaration in the record at page 69 where he stated that one of the officers indicated to him to stop. But even fully crediting that statement by Mr. Estrella that somebody indicated to him to stop, it doesn't change the outcome. It doesn't transform what is clearly shown on Exhibit A to be a consensual encounter into a Fourth Amendment seizure. If an officer tells a citizen on the street to stop, that's not a seizure? If an officer orders someone to stop and that person complies with that order, that is a seizure under this court's case law. So I thought that's what he's arguing happened. No, Your Honor. That's not supported by the record. Well, I mean, okay, go ahead. Did not Judge Orrick, it appears, assume there was a seizure, correct? Did he not? I mean, you sort of got past that and we got into the issue of knowledge. But he basically, the record appears that Judge Orrick essentially assumed that there was a seizure, correct? The district court assumed without deciding. Yes, I understand. That's correct, Your Honor. But there's no need to conduct fact-finding on this because even if this court fully credits Estrella's declaration that an officer indicated to him to stop, first of all, an indication is not a command. And even if it were, the indication to stop did not have the effect of altering Estrella's actions. In other words, he didn't comply with an indication to stop. As you can see on Exhibit A, even assuming that prior to the video starting, one of the officers indicated to him to stop, he doesn't. He walks towards them more than two car lengths down the street. He comes across the street to meet them. Maybe that's consistent with an indication to come over here or come talk to us, but not with an indication to stop. And second, even complying with a request or an indication to do something doesn't transform it into a command such that a consensual encounter would ripen into a seizure. As the Supreme Court said in Torres v. Madrid, even an order for a suspect to halt doesn't become an arrest or a seizure unless and until the suspect complies with that order. And that's simply not what happened here. Unless the Court has further questions, I'll ask that this Court affirm the District Court. Thank you, Counsel. Thank you. We'll give you a minute. We'll give you a minute on the clock. Your Honor, if I may make four quick points on your bottle. First, probable cause is not the appropriate standard because it deals with probabilities. This is not a probabilistic determination. Whether someone's on parole or not is a binary determination. But that's what the Fourth Amendment... We do that all the time in the Fourth Amendment context. Right, with probabilistic determinations, if someone is likely to be committing a crime, but not if someone is on parole, which is an exception to an exception to an exception. We have the warrant requirement from that. We have the probable cause from that. We have Terry's lower standard. We can do a seizure if there's reasonable suspicion of criminal activity. And here we have police power at its greatest where we don't need reasonable suspicion. We can stop anyone who's on parole and all we need to do is have knowledge of the present parole status. So it's not that kind of situation where officers are dealing with probabilities. I guess that's not a bad argument. It's just nowhere in criminal law do we actually require, you know, metaphysical certainty, which seems like what you're advocating. And I'm not sure, Your Honor. I think if the issue was... So I would say Judge Bennett's point. I've never argued that they need to update it every time. It's not my position that they need to do it on the spot. It's just if they had some knowledge ahead of time that as of this date he's still on parole. I guess that begs the question that Judge Bumate's raising, though, because in terms of which standard to apply, if it's not objectively reasonable belief as the government has argued in this briefing, you argue and insist even now, actual knowledge, Judge Bumate's point is, is that here you have a statute under California law which has been upheld by the Supreme Court with respect to being able to search or seize at any time, day or night, without a search warrant or with or without cause. That's the wording of the statute. And in terms of exactly how do you define knowledge, how is a standard of probable cause to believe that someone is a parolee not a workable standard? It seems that it acknowledges there has to be some other basis for it, be it the normal period of time for gang members to be on parole or be it in terms of the interaction with the parolee. But in terms of rising or falling on not having knowledge of the actual end date, really, Mr Parkman, gets to the matter of imposing a standard of actual knowledge. And I'm just trying to ask you if you can explain to me how this works out in a street encounter. In a street encounter, the officer sees an individual and you're saying it has to be actual knowledge of his end date, actual knowledge of when he's no longer on parole. The California statute, it seems that you impose a higher duty than called for under California law that he or she is supposed to stop, make a phone call, inquire, background check. How does the officer get the actual knowledge that you're arguing for? Okay. So, the California statute permits officers to stop and search anyone who's not on parole. It does not set a standard for where that is. California courts and, so the way, if an officer sees a situation where he suspects criminal wrongdoing, then, at that point, if the officer knows that the person's on parole, then the officer knows that that person has a criminal history or has been on parole. And in that situation, the officer can stop. But we were talking about, an officer sees someone, the person's not doing anything wrong. There's no reason to suspect, I mean, maybe there's unreasonable suspicion, but there's no reasonable suspicion the person's doing anything wrong. And if the officer wants to take advantage of the suspicional stop condition that the officer thinks the person might be on, then the officer will need to gain that knowledge. And it's very easy to gain that knowledge when there is no exigency. We're talking about situations, I mean, in this situation, Mr. Estrada's in front of his house working on his car. There is no exigency here. And if I may respond to Judge Brewer. Well, no, that's not quite accurate with all due respect. The record in this, I know that you argued among your three arguments, the third argument that the encounter was arbitrary, capricious and harassing under California law is your third argument, correct? Correct. Let me just follow up because the record reflects that Officer Truitt, if I'm pronouncing his name correctly, indicated in the record that he saw Mr. Estrada wearing an A's hat which he identified with the association with the gang that had A as the membership. That's what he saw. And again, getting back to Judge Bumate's suggestion in terms of probable cause on these facts, does that not give him probable cause to believe that there may be a violation of parole in terms of espousing gang activity? That's one of the things that he was having to comply with under parole was no further gang activity, correct? Yes. Well, it's not clear if Officer Truitt actually ever looked at his conditions, but putting that aside, a few points in response to that. The government has never argued that this stop was justified by a reasonable suspicion of either criminal activity or a parole violation. It has not identified any Ninth Circuit precedent I'm not aware of any that allows a seizure for a suspected violation of a parole violation that is not itself a criminal act. Then, even if that's allowed, the officer would have to know that Mr. Estrada is on parole in order to rise to that reasonable suspicion standard. And even past that, there is not clear factual evidence that Officer Truitt saw that hat before he initiated the seizure. For example, in the video, he Mr. Estrada is wearing the hat backwards and he turns around and only at that point does he say, hey, what's up with the hat? It's true that in his declaration and in the police report, he says that as we pulled up or after we arrived I saw that hat. But there's still a dispute about, it's not clear whether that happened after they indicated for him to stop or afterwards. And again, it's the government's burden to argue that the stop is justified by that. And under United States v. Nguemesi, which is 980 F. 3rd at 1291, this court cannot make that argument for the government when it has not justified on the stop. If I make just one response to Judge Bidey's question, how this is different from a house search, or maybe it's Judge Bidey's. When people live in a house, there is they may have a lease, there's no expectation they're going to move out of that house at some point. So there's not like a date at which point a person must move out of the house. And that's different than a parole condition where that ends. So the officer must know of that end date in order to stop a person before that end date. Thank you, Counsel. Thank you very much. This case is submitted.
judges: BYBEE, BUMATAY, Bennett